Our next case this morning is Hicks v. United States. Mr. Patton, come on back up. Good morning again, Your Honors. Mr. Hicks is entitled to an evidentiary hearing on his 2255 petition. He made a very straightforward claim that his lawyer did not discuss with him at all the option of pleading guilty and the benefits that might accrue from that. The district judge, in denying the 2255, first seemed to indicate that there's no duty on the part of counsel to discuss a plea with the defendant if the government doesn't offer a plea agreement. And I don't think the government doesn't even seem to be defending that position in this appeal because, of course, a lawyer has the duty to discuss with his client the option of pleading guilty regardless of whether or not the government is going to offer a plea agreement because there are still benefits you may be able to receive by pleading guilty regardless of whether there's a plea agreement. Now, obviously, the most obvious one is the getting three levels off for acceptance of responsibility. I'll talk some more about that. But beyond the acceptance of responsibility, our entire criminal justice system, the sentencing part of it anyway, is premised on the idea that a person who pleads guilty ought to get a lower sentence than someone who goes to trial and is convicted. As the district judge pointed out, the CIA is the head of a major drug deal. He's at the top of it. This is no choir boy by any means. No, sir. If you start calculating when he's in level six, I believe, and we're talking about a guy who, he can plead guilty, but this huge operation that he's had, and I assume there are others in that operation that pleaded guilty. There were some. There were a few others that went to trial as well. But it's obviously, I don't know what he's going to do when he pleads guilty. I mean, maybe you say if acceptance of responsibility, you can get some sort of reduction, but it still brings him down to 360 months. Well, he was at life following the trial. And that was an error, a factual error that the district judge made in his ruling on the 2255. Now, it was, I think, based on a statement that the government made in its response to the 2255. And not intentional, I'm sure, but they suggested to the judge that Mr. Hicks' guideline range at the original sentencing was 360 to life. And so even if he pled guilty, got three levels, and went down to 360 to life, that wouldn't have changed his guideline range. That's just factually inaccurate. His guideline range at the original sentencing was life. And Judge Zagel didn't give him life. He gave him 30 years. Because he thought there was some redeeming qualities. He took something into consideration and adjusted it, but that's not it. But think about how much more weight the argument about that we think that he has some rehabilitative potential if you've come in and pled guilty instead of doing a multiple-week trial. And even under the 3553A factors, when you're looking at the need for specific deterrence and the history and characteristics of the defendant, the fact that the defendant came in and pled guilty versus going to trial is just an issue even before the guidelines existed. How long was his trial? I think it was about two to three weeks, Judge. I don't know the exact length of that. So it did do the full. Yeah, because it was a lot of defendants. Correct. And it was a large organization. And, yeah, he's at the top of it. Look, his mandatory minimum is 25, all right, and Judge Zagel gave him 30. The basic premise of your argument is that he would have gotten the full three points and that would have affected his guideline range, and that's just purely conjectural in this case. There's no evidence the government would have given him the third point. And it's speculated that he would have gotten the first two even if he had pleaded guilty. It is somewhat speculative. Anytime you're dealing with an ineffective assistance of counsel claim and you're trying to gauge prejudice, you can't go back and redo it and know for certainty what would have happened had there not been an effective assistance of counsel, and that's true, but even if he hadn't gotten the full three levels off, I would submit to you even if his guideline range was still life, the fact that he pled guilty rather than going to trial would have impacted the sentence, that his sentence most likely would have been lower. It's just I've been doing this for a... But the judge who imposed that sentence said it wouldn't have been different. But the judge, when he said that, he was under the misapprehension that he was at 360 to life and the judge chose to sentence him to 360 and that he would have then resentenced him to 360 to life. And I think with those errors in and of themselves would cause enough concern to send it back because he just... If we send it back, the attorney has died, the district judge has retired. I'm trying to imagine what this hearing would be like. Well, look, I understand those, but I want to put out some timelines for you. Mr. Hicks filed his motion... Could you answer my question? Yeah. A different judge is going to have to speculate about what happened. But that can't be held against Mr. Hicks. He filed this in 2015, and he filed it, the district court ruled on it in May of 2016. Defense counsel died in May 2017. It can't be held against Mr. Hicks that defense counsel died a couple years after Mr. Hicks filed his 2255 petition. And so I understand your point, Judge, and your concern, but I don't see how the fact that defense counsel has passed away and Judge Zagel has retired would be a reason to say, even though Judge Zagel made some factional errors... No, but it probably underscores the inherently speculative nature of this whole inquiry. Well, the prejudice inquiry under Strickland always has speculation to it. I mean, it's just inherent. And we don't have to prove, even by a preponderance of the evidence, that the outcome would have been different. That's not the Strickland standard for prejudice. You just have to undermine the confidence in the proceedings. Could I ask you briefly, Mr. Patton, about the guideline range? Sure. And whether the correct defense level for Mr. Hicks was 45 or 46? Yeah. I will tell you, I don't know how Judge Zagel got to 45 when he said in the sentencing transcript that he thought that the right... The PSR said 46, and he said he was accepting the PSR, and nobody objected to 46, did they? Defense counsel filed a commentary saying he wanted evidentiary hearings on the drug amounts, but then puts a sentence in that says... Did anybody object to the 46 number? I don't think so. But what I noticed in preparing today is there was actually two sentencing hearings, and we don't have a transcript from the first one. The first one was on June 28th of 2012, and this is on a docket entry on the docket sheet, and then you had the July 3rd, 2012, and that's why on the July 3rd, 2012, which is the one we do have the transcript of, Judge Zagel says, as I told you I would, I went back and re-read the pre-sentence report, and I apologize, we didn't catch that earlier and ordered the transcript of the June 28th hearing, but we didn't and nobody else did either. So I don't know if something happened during the course of that that led him to 45. It could be that Judge Zagel misspoke and said 45 instead of 46, but the government used the 45 in the response it filed in the 2255 case. It used the 45 to calculate that, well, hey, even if he pled guilty, his guideline range would have gone down to 42, and a 42 and a 6 is 360 to life, which is, of course, less than the life range that he faced after trial. If I could reserve a few moments for everybody. Sure, that's fine. Thank you. Mr. Fullerton. Good morning. May it please the Court. In answer to your question, Your Honor, as far as I understand, Mr. Hicks' guideline was 46, Offense Level 46, Category 6, found by the District Court, found by the Probation Office, adopted by the District Court, without change according to the Statement of Reasons in the Judgment and Commitment Order. Mr. Hicks at sentencing filed a sentencing memorandum in which he advocated for a lower sentence than the guideline of life, but he conceded in the sentencing memorandum that the Probation Office's calculations of his guideline range were correct. So the guideline was 46. Now, Judge Zagel did say at sentencing that his guideline was probably 45, but it didn't matter because, according to the judge and according to the guidelines, the table, the offense level, maxes out at 43. So he wasn't required at the sentencing hearing to decide whether it was a 46 or a 45. He was a 43, Category 6, guideline life. And as I think has been made clear this morning, and as even counsel concedes, the benefit to Mr. Hicks of pleading blind, that he supposedly forewent because of his attorney's alleged misconduct, is purely speculative. And that's because had he pleaded guilty blind, he perhaps would have received a three-point reduction in his offense level. That in itself is speculative, as Judge Sykes, you point out. That is, he would be required to accept responsibility, and that's not a sure thing with any defendant, and particularly with Mr. Hicks. And it's not a sure thing that he would have received the third point for a timely plea at the government's instance. But even if he had, his range would have been still life in prison because his guideline would have gone from 46 to 43, Category 6. And the only potential benefit that's been pointed out so far is that Mr. Hicks would have gone into sentencing having pleaded guilty rather than having gone to trial. And perhaps that's a benefit, perhaps not. Perhaps he could have said that, you know, I'm a remorseful man, I accept responsibility, and so on and so forth. But the district court explicitly said twice, at least, in his decision denying the 2255 motion that Hicks would not have bettered his position by pleading blind. He said even if he had received the three-point reduction, he would have been in no better position. And the district court also said that a blind plea in this context was of no value to Mr. Hicks. And I think that eliminates the speculation, the speculative possibility that Hicks would have done better. But it certainly means that no hearing is necessary in which some other district court would be required to speculate about what would have happened had Hicks pleaded guilty and received the three points off. So for these reasons, we ask that the court affirm the district court's denial of the 2255 motion. All right, thank you. Thank you. Mr. Patton, anything further? When Judge Zagel said that the blind plea wouldn't have benefited, the next breath he said the reason it wouldn't have benefited him is his guideline range was 360 to life following a trial, and it would have been 360 to life following a plea. That arguably is not the case because he was at life after the trial. He wasn't at 360 to life. And, you know, I've been doing this for a while in the trial courts. People who plead guilty get lower sentences than people that go to trial. It is due, especially since the guidelines, it is the built-in ingredient of our sentencing scheme, is that if you plead guilty and accept responsibility, you are entitled to a lower sentence than someone entitled is the wrong word. It is more likely you should more likely get a lower sentence if you've truly accepted responsibility as part of that guilty plea and saved the court and the government the time and resources for doing the trial. Is there a call this guy is in his 30s? Mid-30s, I think. Yeah. Okay. So, you know, whatever the judge saw, then if you're doing qualities that's not giving, adding life on, well, okay. Nobody else is around at that point, but this happens all the time. Yeah, and I would go back to the judge saying, look, I see, I think Mr. Hicks can, there's some rehabilitative potential here, so I'm not giving him life. That's going to be a much stronger argument if you've pled guilty and accepted responsibility, then maybe you get the 25 years. Maybe the judge says, hey, I think the 25 is enough. And, you know, five years is a long time in prison. Mr. Patton, would it be correct under your position that a defendant who goes to trial and is convicted is entitled to an evidentiary hearing under 2255 as long as he signs an affidavit saying my lawyer didn't tell me about the choice of plea? Not necessarily. It depends on what he says in his affidavit. It depends on the amount of the information. My lawyer didn't tell me about the differences and potential benefits of pleading guilty. That's all. What we've got here for Mr. Hicks is very conclusory. They are limited. I agree with that, although, you know, he's a particularly highly educated individual, so his ability to put out a skill. He's pretty good at organizing and running a business, isn't he? He has skills. I mean, he has skills. They're not the kind that our criminal justice system values, but he has some skills. But, no, if there's other things in the record that conclusively establishes that it's not true, then you don't automatically get the hearing, Your Honor. So it's not automatic. Thank you. Thank you very much. Thanks to both counsel. The case is taken under advisement.